NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

———————————————————————
:
PACTIV CORPORATION, NEWSPRING   :       **Hon. Dennis M. Cavanaugh**
INDUSTRIAL CORPORATION, and   :
NEWSPRING CANADA, INC.,        :           **OPINION**
:
     Plaintiffs,              :     Civil Action No. 08-05072 (DMC)
:
     v.                   :
:
PERK-UP, INC. d/b/a KARI-OUT, INC.,  :
TRIPAK INDUSTRIAL USA, LLC,    :
TRIPAK INDUSTRIAL CORPORATION,  :
IZON INDUSTRIES, INC., 52 GREEN   :
POND ROAD, LLC, 1460 CHESTNUT  :
ASSOCIATES, LLC, 690 UNION     :
BLVD. ASSOCIATES, LLC,        :
HOWARD EPSTEIN, DAVID EPSTEIN,  :
ADAM EPSTEIN, PAUL EPSTEIN, and  :
GREGORY COLACITTI,        :
:
     Defendants.           :
———————————————————————:

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion by Defendants 52 Green Pond Road, LLC

("Green Pond"), 1460 Chestnut Associates, LLC ("Chestnut"), 690 Union Blvd. Associates, LLC

("Union Blvd."), Howard Epstein, David Epstein, Adam Epstein, Paul Epstein, and Gregory Colacitti

to dismiss the Complaint filed by Plaintiffs Pactiv Corporation ("Pactiv"), Newspring Industrial

Corporation ("Newspring Industrial"), and Newspring Canada, Inc.("Newspring Canada") for failure

to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6); and upon

motion by Plaintiffs to dismiss Counterclaims 3-7 filed by Defendants Perk-Up, Inc. d/b/a Kari-Out,

Inc. ("Kari-Out"), Tripak Industrial USA, LLC ("Tripak USA"), and Tripak Industrial Corporation ("Tripak") for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). Pursuant to Fed. R. Civ. P. 78, no oral argument was heard. After carefully considering the submissions of the parties, and based upon the following, Defendants' motion to dismiss Plaintiffs' Complaint is **denied**; Plaintiffs' motion to dismiss Defendants' Counterclaims 3, 4, 5, and 7 is **denied**; and Plaintiffs' motion to dismiss Defendants' Counterclaim 6 is **granted**.

### I. BACKGROUND[1]

#### A. Factual Background

#### 1. Plaintiffs' Claims

Jeffrey Chen founded Newspring Industrial, which develops, manufactures, and markets plastic disposable items such as plates, cutlery, and containers for the food service industry. Chen developed a sealable food container made of plastic that is approved for microwave use by the Food and Drug Administration. Newspring Industrial markets the container under the registered trademark VERSAtainer. On February 11, 1997, Chen applied to the U.S. Patent and Trademark Office ("PTO") for a design patent for VERSAtainer. The PTO issued Chen U.S. Patent No. D415,420 ("'420 Patent") on October 19, 1999. Chen assigned the '420 Patent to Newspring Industrial in May 2004.

Pactiv manufactures specialty packaging products for the consumer, food service, and food packaging markets. In March 2005, Pactiv acquired Newspring Industrial as a subsidiary. Pactiv gained all of Newspring Industrial's right, title and interest in and to the VERSAtainer product line, including the '420 Patent and all intellectual property associated with that product line. Pactiv has

---

[1] The facts set forth in this Opinion are taken from the parties' submissions.

enforced the '420 Patent by bringing patent infringement suits against competitors offering knock-off products in the United States and abroad. In all of these cases, federal courts have either enjoined the defendants from selling the knock-offs or the defendants voluntarily consented to stop selling the knock-offs.

Izon manufactures customized molds for plastic injection molding. Izon has manufactured customized molds for Newspring's VERSAtainer since 2001. Izon possesses Pactiv's mold specifications, which includes the '420 Patent and Pactiv's trade dress.

TriSpring Plastics Inc. ("TriSpring") is a broker that is licensed to sell the VERSAtainer containers in Canada. Gregory Colacitti served as TriSpring's director and worked with the VERSAtainer products. After he left TriSpring, Colacitti formed Tripak Canada and served as its president. Plaintiffs argue that Colacitti chose a name similar to TriSpring in an attempt to benefit from Newspring Industrial's and VERSAtainer's goodwill and reputation.

Tripak Canada began marketing plastic food containers to the food packaging industry in 2002. Colacitti and Tripak Canada retained Izon to design Tripak Canada's plastic injection molds based on Pactiv's VERSAtainer molds. Colacitti and Tripak Canada used the molds to manufacture and sell products that were intended to be direct replacements for Pactiv's VERSAtainer products. Plaintiffs argue that Colacitti controls and manages Tripak Canada as an alter ego such that Colacitti's acts and omissions are the acts and omissions of Tripak Canada and vice versa.

The Epsteins formed Tripak USA to purchase Tripak Canada's assets from Colacitti and move its machinery, molds, and expertise to its manufacturing facility in Rockaway, New Jersey. The intention of this purchase was to manufacture and sell products comparable to Pactiv's VERSAtainer products. The Epsteins formed Green Pond to acquire real estate upon which the

3

Epsteins placed a facility to manufacture Kari-Out's containers.

Kari-Out currently manufactures and sells products that are identical to Pactiv's VERSAtainer. Tripak USA uses the designs and molds originally designed by Izon for Tripak Canada to manufacture its containers. Tripak USA also uses the expertise and design information Colacitti and Tripak Canada gained while working as a Newspring Industrial distributor. Kari-Out employs Colacitti as its key technical adviser. Plaintiffs argue that the Epsteins and Kari-Out use facilities owned by Chestnut and Union Blvd. to manufacture, distribute, and warehouse its containers.

Plaintiffs argue that Kari-Out placed larger VERSAtainer orders with Pactiv so it could stockpile Pactiv inventory while it developed its manufacturing facility. Kari-Out has an outstanding balance with Pactiv in excess of $1,000,000.

### 2. Defendants' Counterclaims

Defendants assert Counterclaims for unfair competition under § 43(a) of the Lanham Act, commercial disparagement/trade libel, tortious interference with economic advantage, breach of the implied covenant of good faith and fair dealing, and antitrust violations under § 2 of the Sherman Act based on the following allegations.

Newspring Industrial distributes its VERSAtainer line of rigid, stackable, sealable, heat-safe, microwavable, plastic food containers to redistributors, who sell them to distributors. Newspring Industrial also sells directly to distributors. Kari-Out is a manufacturer and redistributor of food service products, including the VERSAtainer line. In addition to being Newspring Industrial's customer, Kari-Out is also its competitor. Kari-Out's corporate affiliate, Tripak USA, is also Newspring Industrial's competitor. Kari-Out argues that its investment in selling and marketing the

4

VERSAtainer products to distributors helped build Newspring Industrial into a profitable company and VERSAtainer into a nationally recognized brand.

As the VERSAtainer line grew more popular, Newspring Industrial began selling to more redistributors that competed with Kari-Out. Newspring Industrial also began selling directly to distributors that were Kari-Out's customers. Newspring Industrial told Kari-Out that if it tried to compete with Newspring Industrial on its distributor accounts, Newspring Industrial would raise the wholesale prices it offered to Kari-Out.

After Newspring Industrial became Pactiv's subsidiary it began delaying shipments to Kari-Out but not to other customers. Newspring Industrial also introduced new products and failed to tell Kari-Out they were available for sale but provided those products to other redistributors and distributors. Newspring Industrial also provided the other redistributors with more favorable pricing and purchase terms. As a result, Kari-Out found itself unable to compete with certain redistributors of Newspring Industrial products.

On June 2, 2008, Newspring Industrial raised the price of VERSAtainer products. Defendants argue that Newspring Industrial knew Kari-Out had recently purchased and still possessed a large stock of Newspring Industrial products.

In June 2008 or July 2008, Newspring Industrial discovered that Kari-Out and Tripak USA planned to develop their own line of rigid, stackable, sealable, heat-safe, microwavable, plastic food containers. On July 25, 2008, Newspring Industrial announced a promotion on rigid, stackable, sealable, heat-safe, microwavable, plastic food containers and offered retroactive rebates to certain distributors but not to Kari-Out. This promotion caused the reduction of value of Kari-Out's inventory of Newspring Industrial products.

In August 2008, September 2008, and October 2008, Newspring Industrial approached Kari-Out's customers, including small distributors, and offered to sell directly to them at steep, short-term discounts. Newspring Industrial's offer prevented Kari-Out from selling its inventory of Newspring Industrial products. Newspring Industrial sent sales representatives to meet with Kari-Out's distributor customers in person. The sales representatives offered them special deals, at prices below the listed promotional price, if they opened accounts with Newspring Industrial. Pactiv and Newspring Industrial told certain distributors that they would undersell Kari-Out regardless of what price Kari-Out offered. Pactiv and Newspring Industrial also told Kari-Out's customers that Kari-Out had an outstanding debt with Pactiv and would no longer be carrying Newspring Industrial products or products in the relevant market.

Defendants argue that Pactiv and Newspring Industrial erected barriers to entry by bringing patent and trade dress infringement lawsuits that were objectively baseless on the merits against companies seeking to penetrate the market. Defendants argue that Pactiv and Newspring Industrial knew the '420 Patent was not being infringed. They also assert that the suits were brought to force new entrants out of the market by causing them to incur litigation expenses while simultaneously trying to establish their businesses under a cloud of litigation. The Defendants were either small start-up companies unable to mount any meaningful defense against Plaintiffs causing them to default or settle their lawsuits because they were unable to outlast Plaintiffs' deep litigation pockets. Defendants argue that Plaintiffs are trying to force Kari-Out and Tripak USA out of the market by bringing this patent infringement action, notifying customers about the suit, and telling customers that Kari-Out and Tripak USA are infringing the '420 Patent.

**B. Procedural Background**

Plaintiffs commenced this action for patent infringement and related claims on October 14, 2008. Defendants Green Pond, Chestnut, Union Blvd., the Epsteins, and Colacitti filed a motion to dismiss the Complaint on December 24, 2008.

Plaintiffs allege causes of action for violation of federal law, New Jersey statutory law, and common law. Plaintiffs assert eight Counts: 1) patent infringement against all Defendants pursuant to 35 U.S.C. § 101 (2006); 2) trade dress infringement against all Defendants pursuant to the Lanham Act; 3) unfair competition against all Defendants pursuant to N.J. Stat. § 56:4-1 et. seq. and the common law of the State of New Jersey; 4) trade secret misappropriation against Izon; 5) breach of contract against Kari-Out; 6) breach of contract against Izon; 7) tortious interference with contractual relations against Tripak USA, Tripak Canada, Colacitti, Green Pond, Chestnut, and Union Blvd.; and 8) tortious interference with prospective economic advantage against Kari-Out, Tripak USA, Tripak Canada, the Epsteins, Colacitti, Green Pond, Chestnut, and Union Blvd.

Kari-Out, Tripak USA, and Tripak Industrial filed an Answer and Counterclaims 1-7 on December 24, 2008. They allege seven Counterclaims: (1) invalidity and non-infringement of the '420 Patent; (2) non-infringement of trade dress; (3) unfair competition through false advertising under § 43(a) of the Lanham Act; (4) commercial disparagement and trade libel; (5) tortious interference with economic advantage; 6) breach of the implied covenant of good faith and fair dealing brought by Kari-Out against Newspring Industrial; and 7) monopolization and attempted monopolization under § 2 of the Sherman Act. Plaintiffs and Third-Party Defendants filed a motion to dismiss Counterclaims 3-7 on February 2, 2009.

## II. STANDARD OF REVIEW

A court may dismiss any part of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, the court "must accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)(quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 (3d Cir. 2002)). The court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputed authentic documents if the plaintiff's claims are based on those documents. Miller v. Clinton County, 544 F.3d 542, 550 (3d Cir. 2008)(quoting Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

To defeat a Rule 12(b)(6) motion, a plaintiff must allege enough information to show he is entitled to relief and "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  Although a plaintiff need not provide detailed factual allegations, the grounds of his entitlement to relief require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). Fed. R. Civ. P. 8(a)(2) "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 545).

8

### III. DISCUSSION

### A.      Defendants' Motion to Dismiss Plaintiffs' Complaint

Defendants Green Pond, Chestnut, Union Blvd., the Epsteins, and Colacitti argue that Plaintiffs' Complaint must be dismissed because Plaintiffs have not alleged sufficient facts to pierce the corporate veil or to establish alter ego liability under New Jersey or New York law. Plaintiffs argue that they have sufficiently plead alter ego, regardless of which body of law applies, because they have given Defendants adequate notice of the claims against them pursuant to the Twombly standard.

A corporation is a separate entity from its shareholders. N.J. Dep't of Envtl. Prot. v. Ventron Corp., 94 N.J. 473, 500 (1983); Townley v. Emerson Elec. Co., 681 N.Y.S.2d 741, 744 (N.Y. App. Div. 1998) . The purpose of piercing the corporate veil and alter ego liability "is to prevent an independent corporation from being used to defeat the ends of justice to perpetrate fraud, to accomplish a crime, or otherwise to evade the law." Ventron, 94 N.J. at 500. To pierce the corporate veil or assert alter ego liability under New Jersey law, a plaintiff must allege two prongs:

> (1) one corporation is organized and operated as to make it a mere instrumentality of another corporation, and (2) the dominant corporation is using the subservient corporation to perpetrate fraud, to accomplish injustice, or to circumvent the law.

Bd. of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc., 296 F.3d 164, 171 (3d Cir. 2002). Only after a finding of dominance does a court reach the fraud or injustice issue. Ventron, 95 N.J. at 501.

When considering whether a unity of interest and ownership exists under the first prong of the doctrine the Third Circuit has applied six informative but not necessarily dispositive factors to guide the inquiry:

> [1] gross undercapitalization . . . [2] failure to observe corporate formalities, non-payment of dividends, [3] the insolvency of the debtor corporation at the time, [4] siphoning of funds of the corporation by the dominant stockholder, [5] non-functioning of other officers or directors, absence of corporate records, and [6] the fact that the corporation is merely a façade for the operations of the dominant stockholder or stockholders.

Craig v. Lake Asbestos of Quebec, Ltd., 843 F.2d 145, 150 (3d Cir. 1988)(citations omitted).

Only one New Jersey court has expressly stated that the corporate veil-piercing doctrine applies with equal force to limited liability companies. D.R. Horton, Inc. v. Dynastar Development, LLC, No. MER-L-1808-00, 2005 WL 1939778, at *31 (N.J. Super. Ct. Law Div. Aug. 10, 2005). Other courts have applied the doctrine without expressly holding that it applies with equal force to limited liability companies, and they have disagreed on how much weight should be given to the six non-binding Craig factors in light of the special characteristics of limited liability companies'. See, e.g., Beuff Enter. Florida, Inc. v. Villa Pizza, LLC, No. 07-2159, 2008 WL 2565008, at *12 (D.N.J. June 25, 2009)(finding plaintiffs' allegations of defendants' similar business locations and company executives sufficient to defeat motion to dismiss); State Capital Title & Abstract Co. v. Pappas Bus. Serv., LLC, No. 3:08-cv-3619-FLW, 2009 WL 114160, at *7 (D.N.J. Jan. 15, 2009)(granting motion to dismiss because plaintiffs failed to allege any of the Craig factors in regards to defendant LLC).

To pierce the corporate veil or establish alter ego liability under New York law, a plaintiff must allege that (1) "the owner exercised complete domination over the corporation with respect to the transaction at issue," and (2) "such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." MAG Portfolio Consultant, GMBH v. Merlin Biomed Group LLC, 268 F.3d 58, 63 (2d Cir. 2001). Courts may consider the following factors when determining whether a plaintiff's allegations are sufficient:

10

> (1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address, and telephone numbers of corporate entities; (6) the degree of discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arms length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of the corporation's debts by the dominating entity; and (10) intermingling of property between the entities.

Freeman v. Complex Computing Co., 119 F.3d 1044, 1053 (2d Cir. 1997). The veil piercing doctrine applies to limited liability companies. See Retropolis, Inc. v. 14th St. Dev. LLC, 797 N.Y.S.2d 1, 2 (N.Y. App. Div. 2005). Because the legal analysis required to determine whether piercing the veil is appropriate under New Jersey law is substantially similar to that required by New York law, the Court need not address the choice of law question at this time.

Here, Plaintiffs have alleged facts sufficient "to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true. . . ." to pierce the corporate veil and/or for alter ego liability. Twombly, 555 U.S. at 545 (internal citations and quotations omitted). This is not a determination that piercing the corporate veil or alter ego liability is appropriate, rather, Plaintiffs have alleged enough facts to entitle them to present evidence supporting their allegations at trial. Therefore, Defendants' motion to dismiss Plaintiffs' Complaint for failure to state a claim upon which relief can be granted is **denied**. Given that Defendants' other grounds for dismissal hinge upon whether Plaintiffs have sufficiently plead a theory which will allow them to pierce the corporate veil and/or establish alter ego liability at trial, the Complaint as a whole survives.

**B. Plaintiffs' Motion to Dismiss Defendants' Counterclaims 3-7**

**1. Counterclaim 3: Lanham Act Violation**

Defendants allege that Plaintiffs have violated § 43(a) of the Lanham Act by engaging in false advertising that resulted in unfair competition. Defendants' claim of false advertising is based on six grounds: (1) Plaintiffs filed a Complaint for patent infringement against Defendants although they knew Defendants were not infringing the '420 Patent; (2) Plaintiffs told Kari-Out's customers about the suit; (3) Plaintiffs told Defendants' customers that Defendants were infringing Plaintiffs' '420 Patent; (4) Plaintiffs told Defendants' customers and prospective customers that Kari-Out had an outstanding debt; (5) Plaintiffs told Defendants' customers and prospective customers that Kari-Out did not have and would no longer be carrying or selling Newspring Industrial products; and (6) Plaintiffs told Defendants' customers and prospective customers that Kari-Out would no longer be carrying relevant products.

Plaintiffs move to dismiss the Counterclaim for unfair competition under § 43(a) of the Lanham Act because (1) the Complaint is protected by New Jersey's litigation privilege; and (2) for failure to state a claim upon which relief can be granted. The Court will address these contentions in that order.

**i. Application of the New Jersey Litigation Privilege**

New Jersey has long recognized that "absolute immunity extends to statements, even those defamatory and malicious, made in the course of proceedings before a court of justice" that have some relation thereto. Hawkins v. Harris, 141 N.J. 207, 214 (1995)(quoting Fenning v. S.G. Holding Corp., 47 N.J. Super. 110, 117 (App. Div. 1957)). The privilege applies to "any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by

law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." Id. (quoting Silberg v. Anderson, 786 P.2d 365 (Cal. 1990)). Whether the privilege applies is a question of law. Id.

Plaintiffs assert that the litigation privilege protects their Complaint because the statements therein have a logical relationship to the suit and are in furtherance thereof. Defendants argue that the litigation privilege only protects statements made in the course of a lawsuit and does not include suits brought in bad faith. Defendants also argue that their allegations of bad faith turn the question of whether the litigation privilege applies from a question of law into a question of fact that cannot be decided on a motion to dismiss. Defendants primarily rely on  Hill v. N.J. Dept. of Corr. Com'r Fauver, wherein the Court held that the litigation privilege "does not insulate a litigant from liability for . . . malicious use of process." Hill v. N.J. Dept. of Corr. Com'r Fauver, 342 N.J. Super. 273, 296 (App. Div. 2001).

Defendants correctly cite Hill for the proposition that the litigation privilege does not preclude liability for malicious use of process, which has four elements: (1) the suit was brought without reasonable or probable cause; (2) that it was actuated by malice; (3) that it terminated favorably to the plaintiff; and (4) it must constitute a special grievance, which consists of interference with one's liberty or property. Penwag Prop. Co., Inc. v. Landau, 76 N.J. 595, 599 (1978). The litigation privilege does not extend to the improper filing of a lawsuit. Hill, 342 N.J. Super. at 296. Hill does not support Defendants' contention that filing a suit in bad faith alone takes a Complaint outside the scope of the litigation privilege. Plaintiffs' Complaint does not constitute grounds for malicious use of process because when Defendants filed their Counterclaims the favorable termination prong was not satisfied. There is no indication that Plaintiffs' suit was

13

improperly filed. Plaintiffs' Complaint alleges facts supporting a patent infringement claim against Defendants. Therefore, Plaintiffs' Complaint is protected by the litigation privilege.

**ii. Plaintiffs' Marketplace Activity in Support of its Patent**

Federal patent law shields a patent holder from liability for publicizing a patent in the marketplace absent a showing of bad faith. Hunter Douglas, Inc. v. Harmonic Design, Inc., 153 F.3d 1318, 1336 (Fed. Cir. 1998), cert. denied, 143 L.Ed.2d 45, 119 S. Ct. 1037 (1999), overruled on other grounds by Midwest Indus. Inc. v. Karavan Trailers, Inc., 175 F.3d 1356 (Fed. Cir. 1999). This right is expressly stated at 35 U.S.C. § 287 (2006).

The purpose of patent law is to provide an incentive to invent, promote the full disclosure of inventions, and ensure that ideas in the public domain remain there. Kewanee Oil Co. v. Bicron Corp., 416 U.S. 470, 480-81 (1974). The Federal Circuit has recognized that the purpose of patent law does not conflict with the purpose of § 43(a) of the Lanham Act, which is to promote fair competition in the marketplace. Zenith Electronics Corp. v. Exzec, Inc., 182 F.3d 1340, 1354 (Fed. Cir. 1999). A patentholder's privileged right to make statements about potential infringement of his patent and federal prohibition of unfair competition does not conflict because patents publicized in bad faith do not further the purposes of patent law. Id. Therefore, to state a claim for unfair competition under § 43(a) of the Lanham Act in a patent infringement suit, a litigant must allege that the patentholder publicized its patent to the marketplace in bad faith in addition to the elements required by § 43(a). Id. at 1353.

Alleging that a patentholder publicized its patent in bad faith requires allegations of both objective and subjective bad faith. Mikohn Gaming Corp. v. Acres Gaming, 165 F.3d 891, 897 (Fed. Cir. 1998). The claimant must allege the marketplace activity was objectively baseless, "meaning

14

no reasonable litigant could realistically expect to prevail in a dispute over infringement of the patent." Judkins v. HT Window Fashion Corp., 529 F.3d 1334, 1338-39 (Fed. Cir. 2008). Subjective bad faith is not addressed unless the claimant demonstrates the suit was objectively baseless. Globetrotter Software, Inc. v. Elan Computer Group, Inc., 362 F.3d 1367, 1376 (Fed. Cir. 2004). Courts have interpreted objective bad faith to require either actual knowledge that the patent was invalid, unenforceable, or uninfringed or that there is no reasonable basis to believe it could be enforced. See, e.g., Golan v. Pingel Enter., Inc., 310 F.3d 1360, 1371 (Fed. Cir. 2002); Zenith, 182 F.3d at 1354.

Plaintiffs contend that Defendants' allegations regarding Plaintiffs' marketplace activity were made in a conclusory manner. Plaintiffs also contend that Defendants did not allege enough facts to suggest Plaintiffs' marketplace activity was objectively baseless. Defendants assert that they sufficiently alleged Plaintiffs' marketplace activity was objectively baseless because they alleged Plaintiffs told Defendants' customers and prospective customers that the accused products infringed the '420 Patent despite the knowledge that their statements were false. Defendants also alleged that Plaintiffs' bad faith is evidenced by their failure to conduct a good faith investigation under Fed. R. Civ. P. 11 of infringement of the '420 Patent and trade dress infringement.

Although knowledge of non-infringement alone is sufficient to demonstrate bad faith, that allegation must nevertheless be supported by enough information "to give the defendant fair notice of . . . the grounds upon which [the allegation] rests." Twombly, 550 U.S. at 555. Defendants allege Plaintiffs knew the '420 Patent was not being infringed, but Defendants fail to provide any facts that would suggest Plaintiffs actually gained the alleged knowledge or that discovery would reveal evidence of knowledge. Defendants have not sufficiently alleged that Plaintiffs publicized their

15

patent in the marketplace in bad faith to survive a motion to dismiss.

### iii. Other Bases for Unfair Competition Under the Lanham Act

Liability for false advertising arises under § 43(a)(1)(B) of the Lanham Act where the claimant makes a commercial message or statement that is either (1) literally false or (2) literally true but is ambiguous such that it has the tendency to deceive consumers. Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co., 290 F.3d 578, 586 (3d Cir. 2002). The Lanham Act does not define "commercial advertising or promotion." It has been established that commercial advertising or promotion is (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing customers to buy defendant's goods or services; (4) that is disseminated sufficiently to the relevant purchasing public to constitute advertising or promotion within that industry. Trans USA Products, Inc. v. Howard Berger Co., Inc., No. 07-5924, 2008 WL 852324, at *4 (D.N.J. Mar. 28, 2008)(citing Gordon and Breach Science Publishers S.A. v. American Inst. of Physics, 859 F. Supp. 1521, 1536 (S.D.N.Y. 1994)). To pass the pleading threshold, "a plaintiff at the very least must identify some medium or means through which the defendant disseminated information to a particular class of consumers." Id. (quoting Podiatrist Ass'n v. La Cruz Azul De Puerto Rico, Inc., 332 F.3d 6, 19-20 (1st Cir. 2003)).

Commercial speech is "speech which does no more than propose a commercial transaction." Gordon and Breach Science Publishers S.A., 859 F. Supp. at 1537 (quoting City of Cincinnati v. Discovery Network, Inc., 507 U.S. 410, 422 (1993)). To decide whether speech is commercial, a court must determine (1) if it is an advertisement, (2) if it refers to a specific product or service, and (3) if the speaker has an economic motivation for the speech. U.S. Healthcare v. Blue Cross of Gr. Philadelphia, 898 F.2d 914, 933 (3d Cir. 1990). An affirmative answer to all three questions provides

16

"strong support" for the determination that the speech is commercial. Id. (quoting Bolger v. Youngs Drug Prods. Corp., 463 U.S. 60, 67 (1983)). Commercial speech may include oral statements made by salespeople to customers. See, e.g., Abbott Labs. v. Mead Johnson & Co., 971 F.2d 6, 10 (7th Cir. 1992).

After alleging the statements are commercial speech made in the context of commercial advertising or promotion, the claimant must allege that the accused:

> [1] made a false or misleading statement of fact as to his own product or another's; [2] the statement actually deceives or is likely to deceive a substantial segment of the intended audience; [3] the deception is material in that it is likely to influence purchasing decisions; [4] the accused caused the statement to enter interstate commerce; and [5] the statement results in actual or probable injury to the plaintiff.

Ditri v. Coldwell Banker Residential Affiliates, Inc., 954 F.2d 869, 872 (3d Cir. 1992)(citing U.S. Healthcare, 898 F.2d at 922-23)). A claimant must assert that a misleading message was conveyed. Id. If the advertisement does not state literal falsehoods, then the burden is on the claimant to show that the advertisement leaves a false impression. Id.

Plaintiffs contend that the statements are not actionable because the statements were true at the time they were made. Plaintiffs further argue that they had no obligation to either keep Kari-Out's debt a secret or continue shipments to Kari-Out until the outstanding debt had been satisfied. Plaintiffs do not cite to any support for this argument.

Defendants have alleged sufficient facts concerning Plaintiffs' statements to raise a right to pursue relief for unfair competition under the Lanham Act. Although Defendants did not explicitly allege that Plaintiffs made misleading statements as part of an advertisement or advertising scheme; Defendants have alleged enough facts to suggest that Plaintiffs made the statements to enough of

Kari-Out's customers and prospective customers in a sales capacity such that Kari-Out lost sales and goodwill. Despite Plaintiffs' argument that the statements were not literally false, Defendants allege that customers were left with a false impression that caused a loss of sales and goodwill, which is sufficient to state a claim for unfair competition under the Lanham Act. For the foregoing reasons, Plaintiffs' motion to dismiss Defendants' Counterclaim for unfair competition under the § 43(a) of the Lanham Act is **denied**.

### 2. Counterclaim 4: Commercial Disparagement/Trade Libel

The tort of trade libel is also known as commercial disparagement under New Jersey law. Patel v. Soriano, 269 N.J. Super. 192, 246 (App. Div. 2004)(citing Prosser & Keeton on Torts § 128 at 963 (5th ed. 1984)(Prosser & Keeton). To state a claim for commercial disparagement or trade libel, the claimant must allege (1) publication; (2) with malice; (3) of false allegations concerning another party's property or product; (4) causing special damages. System Operations, Inc. v. Scientific Games Dev. Corp., 555 F.2d 1131, 1140 (3d Cir. 1977); see also Patel, 269 N.J.Super. at 248. To allege malice in a trade libel or commercial disparagement claim, the claimant must allege facts to suggest that the accused knew the statements were false or that they were "published with reckless disregard for their falsity." Floorgraphics, Inc. v. New America Mktg. In-Store Serv., Inc., No. 04-3500, 2006 WL 2846268, at *6 (D.N.J. Sept. 29, 2006)(citing Juliano v. ITT Corp., No. 90-1575, 1991 WL 10023, at *5 (D.N.J. Jan. 22, 1991).

The Third Circuit has not specified whether publication means oral or written communication. The Systems Operations Inc. Court offered the following guidance:

> False communications which damage or tend to damage the
> reputation as to quality of goods or services are variously described

18

> as "disparagement," "product disparagement," "trade libel," or
> "slander of goods." False communications which impugn the
> plaintiff's title to goods or to real property are usually denominated
> "slander of title." In the law of defamation, "slander" connotes oral
> and "libel" written communication but "trade libel," "slander of
> goods," and "slander of title" are used without regard to the manner
> of publication.

Systems Operations Inc., 555 F.2d at 1138. Publication has also been defined as the "communication

of the allegedly libelous statement to a third person with a reasonable ground to suppose that it will

become known to others." Palestri v. Monogram Models, Inc., 875 F.2d 66, 69-70 (3d Cir. 1989).

To prevail on a trade libel claim, the claimant must ultimately prove "pecuniary loss that has

been realized or liquidated, such as lost sales or loss of prospective contracts with customers." Patel,

269 N.J. Super. at 248-49; see e.g., Graco, Inc. v. PMC Global, Inc., No. 08-1304, 2009 WL 904010,

at *35 (D.N.J. Mar. 31, 2009)(finding defendant's allegations of lost sales to established customers

and distributors and inability to acquire new customers were sufficient to survive a motion to

dismiss).

Plaintiffs contend that Defendants did not plead special damages with the required level of

specificity required by New Jersey law. This notwithstanding, Defendants did plead special damages

with the required level of specificity to survive a motion to dismiss because they alleged lost sales

and lost goodwill regarding established and prospective customers. Therefore, Plaintiffs' motion to

dismiss Defendants' commercial disparagement/trade libel claim is **denied**.

### 3. Counterclaim 5: Tortious Interference with Economic Advantage

To state a claim for tortious interference with economic advantage under New Jersey law a

claimant must allege (1) an existing or reasonable expectation of economic benefit or advantage; (2)

19

the defendant's knowledge of that expectancy; (3) the defendant's wrongful, intentional interference with that expectancy; (4) the reasonable probability that the claimant would have received the anticipated economic benefit in the absence of the defendant's interference; and (5) damages resulting from the defendant's interference. Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1167 (3d Cir. 1993)(citing Printing Mart-Morristown v. Sharp Electronics Corp., 116 N.J. 739, 751 (1989)). The protectable right need not be an enforceable contract, but there must be allegations of fact that give rise to some "reasonable expectation of economic advantage" and that suggest the claimant was in pursuit of business. Printing Mart-Morristown, 116 N.J. at 751.

The relevant inquiry is "whether the conduct was sanctioned by the 'rules of the game,' for where a plaintiff's loss of business is merely the incident of healthy competition, there is no compensable tort injury." Lamorte Burns & Co., Inc. v. Walters, 167 N.J. 285, 306 (2001)(citing Ideal Dairy Farms, Inc. v. Farmland Dairy Farms, Inc., 282 N.J. Super. 140, 199 (N.J. Super. Ct. App. Div. 1995)). A defendant's purpose and means must be proper and not done with malice. Id.; see Kopp, Inc. v. United Techs, Inc., 223 N.J. Super. 548, 559 (N.J. Super. Ct. App. Div. 1988)(defining malice as "the intentional commission of a wrongful act without justification or excuse"). Conduct provoked by spite and ill-will is not necessarily sufficient to rise to the level of malice. See e.g., Ideal Dairy Farms, Inc., 282 N.J. Super. at 200-02 (finding defendant distributor who offered to sell plaintiff manufacturer's customers milk at prices so low that they were unprofitable did not constitute malice). Cf. Lamorte Burns & Co., Inc. 167 N.J. at 309 (finding defendants' secretive taking of plaintiff's protected client information combined with the resignation and immediate solicitation of the plaintiff's clients indicated malice).

While Plaintiffs may have acted in healthy competition, Defendants have alleged enough

20

facts to suggest that Plaintiffs sought to steal Kari-Out's customers and offer Kari-Out's customers and competitors lower prices to drive Kari-Out out of business. Enforcing a patent against an infringer does not necessarily permit the patentholder to retaliate by engaging in illegal anticompetitive acts. Furthermore, since Kari-Out is Plaintiffs' customer and competitor, it is important for the Court to determine the "rules of the game" in such a relationship. Defendants should be allowed to present evidence that Plaintiffs' actions were not within the "rules of the game" as they are understood by companies who have the same unique business relationship. Therefore, Plaintiffs' motion to dismiss Defendants' counterclaim for tortious interference with economic advantage is **denied**.

### 4. Counterclaim 6: Breach of the Implied Covenant of Good Faith and Fair Dealing

Every contract in New Jersey contains an implied covenant of good faith and fair dealing. Fields v. Thompson Printing Co., Inc., 363 F.3d 259, 270 (3d Cir. 2004). Under New Jersey law, the implied covenant of good faith and fair dealing is an independent duty and may be breached even if there is no breach of the contract's express terms. Black Horse Lane Assoc., L.P. v. Dow Chem. Corp., 228 F.3d 275, 288 (3d Cir. 2000).

To state a claim for breach of the implied covenant of good faith and fair dealing a contracting party must allege that the accused acted in bad faith or engaged in "some other form of inequitable conduct in the performance of a contractual obligation." Black Horse, 228 F.3d at 289; see, e.g., Ass'n Group Life, Inc. v. Catholic War Veterans, 61. N.J. 150 (1972). The breaching party's bad faith or inequitable conduct must cause the destruction or injury of the claimant's right to receive the fruits of the contract. Wilson v. Amareda Hess Corp., 168 N.J. 236, 245 (2001). The

covenant may allow the inclusion of terms the "parties must have intended . . . because they are necessary to give business efficacy to the contract." N.J. Bank v. Palladino, 77 N.J. 33, 46 (1978)(citing Renee Cleaners, Inc. v. Good Deal Super Markets of N.J., Inc., 89 N.J. Super. 186, 190 (App. Div. 1964)). A claimant cannot satisfy the bad faith element of a claim for breach of the implied covenant of good faith and fair dealing by alleging, without more, that the breaching party's discretionary decisions benefitted the breaching party and disadvantaged the claimant. Wilson, 168 N.J. at 251.

Plaintiffs contend that Defendants' Counterclaim must fail as a matter of law because Defendants did not allege the existence of a valid contract. Plaintiffs further argue that even if Defendants had alleged the existence of a valid contract, Plaintiffs' conduct was typical competitive behavior and therefore not actionable. Defendants argue it has alleged the existence of a valid contract and that whether Plaintiffs' conduct was typical competitive behavior is a question of fact that cannot be addressed at the motion to dismiss stage.

This Court has dismissed claims for breach of the implied covenant of good faith and fair dealing that did not allege the terms of the agreement or the duties of the parties pursuant to the agreement. See e.g., Pinnacle Choice, Inc. v. Silverstein, No. 07-1379, 2007 WL 2212861, at *4 (D.N.J. July 31, 2007). Defendants alleged it entered into a valid contract with Plaintiffs by placing orders for products and that the terms are of this contract come from the purchase order form. Defendants, however, did not provide a copy of this order form. Defendants did not allege any facts suggesting that Plaintiffs had a special agreement with Kari-Out that guaranteed Kari-Out would be able to sell its Newspring Industrial products exclusively. The terms are particularly necessary in this case because Kari-Out is Plaintiffs' customer and competitor. Without this information, it is

impossible for the Court or Plaintiffs to know whether the covenant may be used to imply terms the parties must have intended and whether Plaintiffs' conduct breached those terms. For this reason, Plaintiffs' motion to dismiss Defendants' counterclaim for breach of the implied covenant of good faith and fair dealing is **granted**.

### 5. Counterclaim 7: Sherman Act Violation

Defendants allege that Plaintiffs have engaged in sham litigation and anticompetitive conduct that constitutes monopolization and/or attempted monopolization of the manufacture and sale of rigid, stackable, sealable, heat-safe, microwavable, plastic food containers in violation of § 2 of the Sherman Act. Plaintiffs contend that Defendants' Counterclaim must be dismissed on two grounds: (1) failure under the Noerr-Pennington doctrine; and (2) failure to allege anticompetitive conduct.

### i. The Noerr-Pennington Doctrine

The Noerr-Pennington doctrine protects parties that petition the government for redress from antitrust liability. Eastern R.R. Presidents Conference v. Noerr Motor Freight, 365 U.S. 127 (1961); United Mine Workers of Am. v. Pennington, 381 U.S. 657 (1965)("Noerr-Pennington doctrine"). The Noerr-Pennington doctrine does not apply to lawsuits that are "mere sham[s] to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor." Noerr Motor Freight, 365 U.S. at 144.

There is a two-step test to determine whether a lawsuit constitutes "sham litigation." First, under the objective prong, the lawsuit must be "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49, 60 (1993). A court only analyzes the litigant's

23

subjective motivation if it concludes that the suit at issue is objectively baseless. Id. at 50. Second, under the subjective prong, the lawsuit must conceal "an attempt to interfere directly with the business relationships of a competitor, through the use of the governmental process . . . as an anticompetitive weapon." Id. at 60-61 (citations omitted).

Whether the present case satisfies the objective prong of the sham litigation exception should not be decided at this stage because "[r]easonableness is a question of fact, and the Court cannot make such factual determinations on a factual controversy roiled by a motion to dismiss." Hoffman-La Roche Inc. v. Genpharm Inc., 50 F. Supp. 2d 367, 380 (D.N.J. 1999). Since questions of fact remain regarding the applicability of the Noerr-Pennington doctrine, the Court will not decide at this stage whether Plaintiffs' other actions constituted anticompetitive conduct. Therefore, Plaintiffs' motion to dismiss Defendants' Counterclaim for violation of § 2 of the Sherman Act is **denied**.

### IV. CONCLUSION

For the reasons stated above, Defendants' motion to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) is **denied**; Plaintiffs' motion to dismiss Defendants' Counterclaims 3, 4, 5 and 7 is **denied**; and  Plaintiffs' motion to dismiss Defendants' Counterclaims 6 is **granted**.


 S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date:   August 18, 2009
Orig:   Clerk
Cc:     All Counsel of record
        Hon. Mark Falk, U.S.M.J.
        File